# In the United States Court of Federal Claims

BID PROTEST
No. 16-1684C
(Filed Under Seal: December 23, 2016 | Reissued: January 10, 2017)[*]

|  |  |  |
|---|---|---|
| MUNILLA CONSTRUCTION MANAGEMENT, LLC, | ) ) ) ) |  |
|  Plaintiff, | ) ) ) | Keywords: Temporary Restraining Order; Likelihood of Success; Irreparable Harm; Bid Protest; 28 U.S.C. § 1491(b). |
| v. | ) ) |  |
| THE UNITED STATES OF AMERICA, | ) ) ) |  |
|  Defendant, | ) ) |  |
| and | ) ) |  |
| SEAWARD SERVICES, INC., | ) ) |  |
|  Defendant-Intervenor. | ) ) |  |

*Stephen Gregory Joy*, Smith, Currie & Hancock LLP, Atlanta, GA, for Plaintiff. *Karl Frederick Dix*, Smith, Currie & Hancock LLP, Atlanta, Georgia, and *Alan I. Saltman*, Smith, Currie & Hancock LLP, Washington, DC, Of Counsel.

*Amanda L. Tantum*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General. *Joe D. Baker*, Navy Supply Systems Command, Fleet Logistics Center Jacksonville, Department of the Navy, Of Counsel.

---

[*] This Opinion was originally issued under seal on December 23, 2016, and the parties were given the opportunity to request redactions. The parties disagree about the extent of redactions appropriate for this public decision, but the Court agrees with Plaintiff that its prices are proprietary, competition-sensitive information and should not be disclosed. However, the Court will not redact the names of non-party offerors. This Opinion is now reissued with redactions indicated by brackets. Additionally, the Court has corrected four typographical errors in citations on pages two, four, six, and seven.

*Shlomo D. Katz*, Brown Rudnick LLP, Washington DC, for Defendant-Intervenor. *Daniel B. Abrahams*, Brown Rudnick LLP, Washington, DC, and *Tammy Hopkins*, Brown Rudnick LLP, Washington, DC, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiff Munilla Construction Management, LLC (Munilla) filed this post-award bid protest on December 22, 2016. ECF No. 1. On the same day, Munilla also filed a motion for a temporary restraining order and preliminary injunction. ECF No. 5. On December 23, 2016, the Court heard oral argument on the motion. For the reasons discussed below, Munilla's motion for a temporary restraining order is hereby **DENIED**.

**BACKGROUND**[1]

Munilla is a construction company that has been in operation for more than thirty-two years. Pl.'s Mem. of Law in Supp. of Its Mot. for TRO, Prelim. Inj., and Permanent Inj. (Pl.'s Mem.) at 3, ECF No. 5. Munilla alleges that it (and its predecessor company) have provided "port operations services at Guantanamo Bay Naval Station under contract with the Department of the Navy since 1999." Compl. ¶ 4.

In June 2016, the Navy issued Request for Proposal number N68836-16-R-0003 (the RFP), a re-solicitation of the port services then being provided by Munilla. See id. ¶¶ 6, 9. Munilla submitted a proposal in response. Id. ¶ 11.

The solicitation was for a firm fixed-price contract and contracting authority was based upon FAR Part 12 and FAR Part 15. Def.'s Notice of Filing Solicitation, Approved Business Clearance, and Decl. of Harm (Def.'s Notice) Ex. A at 158, ECF No. 22-1. The RFP provided for award of the contract to the lowest-priced technically acceptable offeror. Pl.'s Mem. at 5; see also Def.'s Notice Ex. A at 169 ("Government intends to award a contract . . . to the responsible Offeror whose proposal conforming to the solicitation will be most advantageous to the Government . . . and will be the Lowest Price Technically Acceptable (LPTA) Offer"). The RFP stated as follows regarding the evaluation of price:

> 2. Reasonableness: Price is fully justified and supported and is considered fair under current market conditions as well as reasonable to both the Offeror and the Government. Reasonableness may also be determined by comparing the proposed pricing with Government estimates and/or other offers received. Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly over or understated as indicated by the application of cost or price analysis

---

[1] The facts in this section are based on the allegations in Munilla's complaint as well as the materials submitted by both Munilla and the government in connection with Munilla's motion.

      techniques. An offer may be rejected if the Contracting Officer determines that the lack of balance proposes an unacceptable risk to the Government. In accordance with FAR 15.404-1(g)(2) a price analysis will be conducted on the individual CLINs to determine whether unbalanced pricing occurred.

Def.'s Notice Ex. A at 171–72.

      The Navy ultimately awarded the contract to Seaward Services, Inc. (Seaward) on October 27, 2016. Pl.'s Mem. at 6; see also Compl. ¶ 12. Munilla requested a debriefing and on November 1, 2016, the Navy informed Munilla that although Munilla's proposal was technically acceptable, it was not the lowest-priced; rather, Seaward had the lowest-priced technically acceptable proposal. See Pl.'s Mem. at 6.

      According to Munilla (and as reflected in the source selection documents), its base year price was [***], while Seaward's base year price was $3,539,749. Id. Munilla's total price, including option years, was [***], while Seaward's was $20,475,969. Id. at 6–7. Notwithstanding only a difference of [***] (or approximately [***]%) in overall contract price between Munilla and Seaward, Munilla alleges that there are substantial differences between Munilla's and Seaward's contract line item prices. See id. It highlights a number of line items from both proposals which, according to Munilla, reflect differences between it and Seaward of tens and hundreds of thousands of dollars on different line items. Id. at 7–8.

      Munilla further alleges that some of Seaward's line item pricing is "so low that it is below cost" and also would not cover the cost of performance for its subcontractors. See id. at 8–9. In contrast, Munilla states that other line items in Seward's proposal are "substantially overstated." Id. at 9.

      Munilla alleged in its complaint and in its Memorandum in support of its TRO Motion that its proposal was the third lowest-priced, and that a second offeror's proposal (that of SoBran, Inc.) was priced lower than Munilla's, but higher than Seaward's. See id. at 10-11. It claimed that "SoBran's pricing was only [***] higher than Seaward's" and that the Navy thus also failed to assess whether SoBran's pricing was "reasonable" and "fully justified and supported and . . . considered fair under current market conditions." Id. Documentation provided by the government in response to Munilla's motion, however, indicates that SoBran's proposal was found technically unacceptable. Def.'s Opp'n to Pl.'s Mot. for a TRO (Def.'s Opp'n) App. at Appx248. It further shows that there was another technically-acceptable offeror whose overall proposal was less expensive than Munilla's: Crowley Government Services, Inc. (Crowley); its proposal price (with government adjustments) was [***] (which is approximately [***] lower than Munilla's, reflecting a price difference of a little less than [***]%). Id. at Appx248–49.

      After the contract award to Seaward, Munilla filed a protest at the Government Accountability Office (GAO) on November 3, 2016, alleging that Seaward's proposal was "significantly understated and unbalanced" and "unreasonable," and that the government failed to perform a "proper price analysis." Pl.'s Mem. at 11–12. On December 14, 2016, the GAO dismissed Munilla's protest on the ground that "the Navy was not required to perform a price

analysis to determine if the proposed prices were too low." Id. at 12. Munilla then filed its bid protest action in this Court. ECF No. 1.

In its complaint, Munilla alleges that both Seaward's and SoBran's prices were "unreasonable to the Offeror and/or the Government" and that they were "significantly understated and unbalanced." Compl. ¶ 28. It argues that the Navy failed to engage in the proper price analysis to determine price reasonableness as required by the RFP and the FAR. See id. ¶ 40. Specifically, Munilla argues, the Navy failed to comply with the RFP's requirement, "in accordance with FAR 15.404-1(g)(2)" to conduct a price analysis on the individual CLINs "to determine whether unbalanced pricing occurred." Further, according Munilla, the Navy failed to conduct a proper analysis to determine whether Seaward's price was "reasonable" and "fully justified and supported and . . . fair under current market conditions." See Pl.'s Mem. at 10. It thus requests that the Court issue a temporary restraining order restraining the government from:

> [E]xecuting a contract pursuant to the RFP with any proposer other than [Munilla], from issuing a notice to proceed to Seaward, . . . from taking any action toward implementing the contract award to any proposer other than [Munilla], from directing any contractor other than [Munilla] to perform work on the Project, [and] from permitting any bidder other than [Munilla] to perform work on the Project."

Id. at 17. It also requests a preliminary and permanent injunction providing similar relief. See id. at 17–18.

The Navy has extended Munilla's contract through January 31, 2017. Compl. ¶ 35; see also Def.'s Notice Ex. C ¶¶ 2, 4, ECF No. 22-3. The Navy indicates that one option period remains on Munilla's contract for the period February 1 through February 28, 2017. Def.'s Notice Ex. C ¶ 2. The parties indicated at oral argument that the Navy and Seaward are moving forward with contract transition, which resumed on December 15, 2016.

## DISCUSSION

A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Jones Automation, Inc. v. United States, 92 Fed. Cl. 368, 370 (2010) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). The standards for determining whether to grant a temporary restraining order are the same as those that apply to a motion for a preliminary injunction. They require the moving party to demonstrate that: (1) it is likely to succeed on the merits; (2) it will be irreparably harmed without injunctive relief; (3) the balance of hardships tips in its favor and (4) the public interest favors the grant of injunctive relief. Am. Signature, Inc. v. United States, 598 F.3d 816, 823 (Fed Cir. 2010) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 19 (2008)); see also Erico Int'l Corp. v. Vutec Corp., 516 F.3d 1350, 1353–54 (Fed. Cir. 2008) (discussing injunctive relief in a patent context); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). "No single factor is determinative, and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Contracting Consulting Eng'g LLC v. United States, 103 Fed. Cl. 706, 709 (2012) (quoting FMC Corp., 3 F.3d at 427). At the same

time, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify . . . denial" of a preliminary injunction or temporary restraining order. See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990). In this case, Munilla has failed persuade the Court that the balance of the equities favors the extraordinary remedy of a TRO.

First, Munilla has not established a likelihood of success on the merits. Even assuming that its legal challenge to the award to Seaward were likely to succeed (an issue upon which the Court expresses no opinion at this point), it is not clear that Munilla possesses standing to bring such a challenge. To possess standing to bring a bid protest, a plaintiff must be an interested party within the meaning of 28 U.S.C. § 1491(b)(1), i.e., an actual or prospective bidder (or offeror) who possesses a direct economic interest in the matter. Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). In post-award protests, a plaintiff is an interested party, and thus has standing, where it would have had a "substantial chance" of winning the award "but for the alleged error in the procurement process." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003); see also Weeks Marine, Inc., 575 F.3d at 1359; Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006).

Here, Munilla has not established that it would have had a substantial chance of winning the award but for the errors it alleges because—even if the award to Seaward were set aside—the next lowest-priced technically acceptable offer after Seaward's was made by another offeror, Crowley. Def.'s Opp'n App. at Appx248–49; see also SOS Int'l LLC v. United States, 127 Fed. Cl. 576, 587–88 (2016) (finding that plaintiff lacked standing because, inter alia, the record indicated it would not have been next in line for the award if its allegations of error were correct). Crowley's offer was priced [***] lower than Munilla's, and [***] higher than Seaward's. See Def.'s Opp'n App. at Appx248–49. Particularly given the fact that Crowley's total price is so close to Munilla's the Court has no basis at this time for concluding, as counsel suggested at oral argument, that an award to Crowley would be subject to the same legal defects as are alleged with respect to the award to Seaward. Therefore Munilla has not shown a likelihood of success on the merits and the first factor weighs against the granting of a temporary restraining order.

Further, the second factor, whether the plaintiff will suffer irreparable harm absent injunctive relief, also counsels against the issuance of a temporary restraining order. "To demonstrate an irreparable injury, a plaintiff must show that without a preliminary injunction or TRO it will suffer irreparable harm before a decision can be rendered on the merits." OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001). Given the expedited briefing schedule the Court is establishing (which will result in a final decision by January 31, 2017), this means that—to justify a TRO—Munilla must show that it will suffer irreparable harm in the next month if the transition activities that began last week continue.

In that regard, Munilla alleges that it will suffer such injury because Seaward "may begin to hire MCM employees and MCM may not be able to replace or rehire those personnel given restrictions on personnel who can travel to and work at the Guantanamo Bay Naval Station." Pl.'s Mem. at 25. "[A] turnover of MCM's employees," Munilla further forecasts, "could lead to

the loss of personnel with expertise in work at the Guantanamo Bay [N]aval Station," thereby "disrupt[ing] MCM's ability to continue to provide services at the base." Id. In addition, according to Munilla, "if an injunction is not issued and another contractor begins work but MCM is ultimately successful in its protest, there could be a second turnover which would result in significant extra costs." Id. Finally, Munilla expresses concern that its chances for securing relief other than bid preparation costs would be adversely affected if the transition to Seaward were permitted to move forward at this time. See id. at 24.

The Court finds these allegations insufficient to establish irreparable harm. First, the loss of personnel by an incumbent contractor during a transition period generally does not constitute irreparable injury. See, e.g., IBM Corp. v. United States, 118 Fed. Cl. 677, 684–85 (2014) ("the mere fact that an incumbent's employees begin to move over to work for the awardee does not, without more, constitute irreparable harm"); Eskridge Research Corp. v. United States, 92 Fed. Cl. 88, 99 (2010) (stating that "the decision of [incumbent-protester's] employe[e]s to work for [awardee] is not the kind of injury that constitutes irreparable harm"); Comput. Scis. Corp. v. United States, 51 Fed. Cl. 297, 323 n.91 (2002) ("[A] potential loss of employees is not an irreparable harm."); PGBA, LLC v. United States, 60 Fed. Cl. 196, 221 (2004) (loss of employees is "significant," but not an irreparable injury, because the court would then be required "to consider any incumbent contractor's loss of a successor contract to be irreparable harm"), aff'd, 389 F.3d 1219 (Fed. Cir. 2004).

Further, and in any event, Munilla's claims that it is likely to lose personnel over the next month if a temporary restraining order is not granted appear to be supported by little more than conjecture. See Pl.'s Mem. Ex. 1 ¶ 23 (observing that if another contractor is permitted to mobilize "that contractor may begin to hire MCM employees and MCM may not be able to replace or rehire those personnel given restrictions on personnel who can travel to and work at the Guantanamo Bay Naval Station"). Indeed, it seems likely that even if the employees who are currently performing the work at Guantanamo Bay Naval Station for Munilla accept job offers from Seaward for work to begin on February 1, they would choose to remain as Munilla's employees if the Court enjoined the award of the contract to Seaward at the end of January.

The Court finds similarly unpersuasive Munilla's other allegation of irreparable injury, which is based on an argument that allowing a transition to begin now would impair its chances of securing any relief other than bid protest costs even if it ultimately prevails in this litigation. A "contention that without a preliminary injunction, [the awardee] will become so entrenched that [the protester] will have lost its opportunity to compete does not demonstrate irreparable harm." Eskridge Research Corp., 92 Fed. Cl. at 99; see also Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 582 (2003) (noting that other courts have rejected the claim that the contract awardee would become so entrenched during transition that the protester would be irreparably harmed without an injunction).

Finally, given the lack of irreparable harm to Munilla, the balance of the hardships weighs against a TRO. The transition process has already begun. Halting it now with the possibility of having to resume it in February would be, if nothing else, disruptive to the

government and to Seaward.² Nor does the public interest support the issuance of a temporary restraining order. To be sure, the public has an interest "in honest, open, and fair competition in the procurement process." GEO Grp., Inc. v. United States, 100 Fed. Cl. 223, 230 (2011) (quoting Software Testing Sols., Inc. v. United States, 58 Fed. Cl. 533, 538 (2003)). Nonetheless, "[i]t is equally clear . . . that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." Id. (quoting Aero Corp. S.A. v. United States, 38 Fed. Cl. 237, 242 (1997)). In this case, given that Munilla has failed, at least at this early stage, to demonstrate a likelihood of success on the merits, the Court concludes that the latter interest should prevail.

## CONCLUSION

For the reasons set forth above, Munilla's motion for a temporary restraining order is **DENIED**.

**IT IS SO ORDERED.**

                                            s/ Elaine D. Kaplan
                                            ELAINE D. KAPLAN
                                            Judge

---

² At oral argument on the motion, Munilla disputed the government's contentions that the government would incur additional costs if the transition were suspended. In fact, Munilla argued that the government would save money if it continued to perform on its existing contract through the end of February. Given the expedited nature of the proceedings, the Court has not considered the government's allegations of additional costs (or Munilla's response) in determining the balance of the hardships.